KYLE J. KAISER (13924)
RANDALL S. KENT (13273)
Assistant Utah Attorneys General
DEREK E. BROWN (10476)
Utah Attorney General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0856
E-mail:    kkaiser@agutah.gov
           rakent@agutah.gov
*Attorneys for Defendants State of Utah, Utah State Dep't of Health and Human
Services, and Utah State Developmental Center*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GABRIELLA COLLETTE, for herself and on behalf of CHANNIN COLLETTE, an incapacitated person,<br><br>        Plaintiff,<br><br>v.<br><br>UTAH STATE DEVELOPMENTAL CENTER; UTAH STATE DEPT. OF HUMAN SERVICES; STATE OF UTAH; JAROD SQUIRE,<br><br>        Defendants. | **MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00213<br><br>Judge Honorable Ted Stewart<br>Magistrate Judge Jared C. Bennett |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................... 3

MOTION .................................................................................................................... 7

MEMORANDUM OF LAW ........................................................................................ 8

INTRODUCTION ...................................................................................................... 8

FACTUAL BACKGROUND ..................................................................................... 10

LEGAL STANDARD ................................................................................................ 12

LEGAL ARGUMENT ............................................................................................... 14

1.   The Center is not an entity subject to suit................................................. 15

2.   Collette's First Cause of Action should be dismissed because the State
Defendants are not "persons" subject to suit under § 1983. ........................... 16

   2.1   The State is not a "person" subject to suit under § 1983. ............... 17

   2.2   DHHS is not a "person" subject to suit under § 1983...................... 17

3.   Collette's Second Cause of Action under the Fair Housing Act should be
dismissed because State Defendants enjoy sovereign immunity from suit. ...... 20

4.   Collette's Fourth Cause of Action under the implied right of action under
Title IX should be dismissed because Collette has not pleaded that State
Defendants operated an education program or activity, and because Collette has
not pleaded deliberate indifference............................................................... 22

   4.1   Collette fails to plead that DHHS operates an "education" program
   or activity. ................................................................................... 24

   4.2   Collette has not alleged deliberate indifference........................... 27

5.   Collette's Fifth Cause of Action under the ADA should be dismissed because
Collette has failed to state a claim of discrimination....................................... 29

6.   Collette's state-tort claims should be dismissed as barred by the
Governmental Immunity Act of Utah. ........................................................... 32

CONCLUSION ......................................................................................................... 35

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alden v. Maine,*
  527 U.S. 7064 (1999) ........................................................................................................ 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................... 13, 27

*Asset Acceptance LLC v. Utah State Treasurer,*
  2016 UT App 25, 367 P.3d 1019 ...................................................................................... 33

*Bd. of Trustees of Univ. of Ala. v. Garrett,*
  531 U.S. 356 (2001) ......................................................................................................... 20

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................................................... 13

*Bloomquist v. Utah,*
  No. 2:22-CV-00659, 2023 WL 2541987 (D. Utah Mar. 7, 2023) ..................................... 17

*Bradford v. Salt Lake City Police Dep't,*
  No. 2:09-cv-144-DAK, 2010 WL 681659 (D. Utah Fe. 23, 2020) ................................... 19

*Chapman v. Tenn. Dep't of Transp.,*
  No. 3:19-cv-00128 2021 WL 1110668  (M.D. Tenn. March 23, 2021) ............................. 26

*Colbert v. District of Columbia,*
  78 F. Supp. 3d 1 (D.D.C. 2015) ............................................................................. 25, 26, 27

*Crane v. Utah Dep't of,*
  *Corrs.*, 15 F.4th 1296 (10th Cir. 2021) ............................................................................ 29

*Crichlow v. Thompson,*
  No. 1:23-CV-00061, 2025 WL 392798 (D. Utah Jan. 16, 2025) ..................................... 16

*Cunningham v. Weber Cnty.,*
  2022 UT 8; 506 P.3d 575 .................................................................................................. 33

*Davis v. Monroe Cnty. Bd. of Educ.,*
  526 U.S. 629 (1999) ................................................................................................... 22, 23

*Delkhah v. Moore,*
  240 F. App'x 768 (10th Cir. 2007) .................................................................................... 21

*Doe v. Mercy Catholic Med. Ctr.,*
  805 F.3d 545 (3d Cir. 2017) ....................................................................................... 24, 25

*Franklin v. Gwinett Cnty. Pub. Sch.,*
  503 U.S. 60 (1992) ..................................................................................................... 23, 28

*Gebser v. Lago Vista Indep. Sch. Dist.,*
  524 U.S. 274 (1998) ................................................................................... 22, 23, 27, 28

*Gee v. Pacheco,*
  627 F.3d 1178 (10th Cir. 2010) ........................................................................................ 13

*Gohier v. Enright,*
  186 F.3d 1216 (10th Cir. 1999) ........................................................................................ 29

*Gregory v. S.C. Dep't of Trans.*,
  289 F. Supp. 2d 721 (D.S.C. 2003) .................................................................................. 21
*Guttman v. Khalsa*,
  669 F.3d 1101 (10th Cir. 2012) ....................................................................................... 32
*Hall v. Bellmon*,
  935 F.2d 1106 (10th Cir. 1991) ....................................................................................... 13
*Hall v. Witteman*,
  584 F.3d 859 (10th Cir. 2009) .................................................................................... 12, 13
*Hernandez v. Ft. Bend Indep. Sch. Dist.*,
  No. H-19-915, 2019 WL 1934674 (S.D. Tex. May 1, 2019) ........................................... 31
*J.V. v. Albuquerque Pub. Sch.*,
  813 F.3d 1289 (10th Cir. 2016) ....................................................................................... 30
*Kojima v. Lehi City*,
  No. 2:13-CV-000755-EJF, 2015 WL 4276399 (D. Utah July 14, 2015) ..................... 15, 16
*Ledfors v. Emery Cnty. Sch. Dist.*,
  849 P.2d 1162 (Utah 1993) .............................................................................................. 34
*Leverington v. City of Colo. Springs*,
  643 F.3d 719 (10th Cir. 2011) .................................................................................... 12, 13
*Martinez v. Winner*,
  771 F.2d 424 (10th Cir. 1985) ......................................................................................... 15
*McCardell v. U.S. Dep't of Housing & Urban Dev.*,
  794 F. 3d 510 (5th Cir. 2015) .......................................................................................... 21
*Melton v. Okla ex rel. Univ. of Okla.*,
  523 F. Supp. 3d 1080 (W.D. Okla. 2021) ......................................................................... 21
*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
  429 U.S. 274 (1977) ................................................................................................... 17, 20
*O'Connor v. Davis*,
  126 F.3d 112 (2d Cir. 1997) ............................................................................................ 24
*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .......................................................................................................... 20
*Petersen v. Bd. of Educ. of Davis Cnty. Sch. Dist.*,
  855 P.2d 241 (Utah 1993) ............................................................................................... 34
*Rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*,
  511 F.3d 1114 (10th Cir. 2008) ....................................................................................... 28
*Ross v. Univ. of Tulsa*,
  859 F.3d 1280 (10th Cir. 2017) ....................................................................................... 28
*Rossley v. Drake Univ.*,
  336 F. Supp. 3d 959 (S.D. Iowa 2018) ............................................................................ 26
*Roubideaux v. N.D. Dep't of Corrs. & Rehab.*,
  570 F.3d 966 (8th Cir. 2009) ..................................................................................... 25, 27
*Sanders v. Leavitt*,
  2001 UT 78, 37 P.3d 1052 .............................................................................................. 34
*Seminole Tribe of Fla. v. Florida*,
  517 U.S. 445 (1996) ........................................................................................................ 20

4

*St. Louis Baptist Temple, Inc. v. FDIC,*
  605 F.2d 1169 (10th Cir. 1979) ........................................................................... 13
*Stack v. McCotter,*
  No. 02-4157, 79 F. App'x 383 (10th Cir. Oct. 24, 2003) ....................................... 14
*Steadfast Ins. Co. v. Ag. Ins. Co.,*
  507 F.3d 1250 (10th Cir. 2007) ........................................................................... 18
*Strange v. Mansfield Indep. Sch. Dist.,*
  No. 4:18-CV-00101-O, 2018 WL 3950219 (N.D. Tex. Aug. 17, 2018) ................... 31
*Sutton v. Utah State Sch. for Deaf & Blind,*
  173 F.3d 1226 (10th Cir. 1999) ..................................................................... 17, 19
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007) ........................................................................................... 13
*Tennessee v. Layne,*
  541 U.S. 509 (2004) ........................................................................................... 32
*Tiede v. State,*
  915 P.2d 500 (Utah 1996) ................................................................................... 34
*United States v. Georgia,*
  546 U.S. 151 (2006) ..................................................................................... 20, 32
*Ute Indian Tribe of Uintah and Ouray Indian Reservation v. Ure,*
  737 F. Supp. 3d 1183 (D. Utah. 2024) ........................................................... 18, 19
*Watson v. Univ. of Utah Med. Ctr.,*
  75 F.3d 569 (10th Cir. 1996) .............................................................................. 18
*Will v. Mich. Dep't of State Police,*
  491 U.S. 58 (1989) ............................................................................................. 17
*Woodberry v. Dallas Area Rapid Transit,*
  No. 3:14-CV-03980-L, 2017 WL 840976 (N.D. Tex. Mar. 3, 2017) ................. 31, 32
*Woods v. G.B. Cooley Hosp. Serv. Dist.,*
  2007 WL 4812054 (W.D. La. Dec. 10, 2017) ................................................. 30, 31

Statutes

20 U.S.C. § 1681 .......................................................................................... 22, 24
20 U.S.C. § 1682 ................................................................................................ 22
20 U.S.C. § 1687 ................................................................................................ 24
42 U.S.C. § 1983 .......................................................................................... passim
42 U.S.C. § 3601 ................................................................................................ 20
42 U.S.C. § 12132 .............................................................................................. 29
Utah Code § 26B-1-103 ...................................................................................... 11
Utah Code § 26B-1-215(2) ............................................................................ 11, 15
Utah Code § 26B-2-201(1) ...................................................................... 11, 18, 19
Utah Code § 63G-7-102(4)(b) ............................................................................. 21
Utah Code § 63G-7-101(2)(b) ............................................................................. 33
Utah Code § 63G-7-301(2)(i) .............................................................................. 33
Utah Code § 63G-7-201(4) .................................................................................. 33

5

Utah Code §§ 63G-7-101(3) ................................................................................................ 21
Utah Code §§ 63G-7-102(4)(a), (10) ................................................................................... 15

Rules

Fed. R. Civ. P. 10(c) .......................................................................................................... 13
Federal Rule of Civil Procedure 12(b)(6) ....................................................................... 7, 12

Regulations

34 C.F.R. § 106.1 ............................................................................................................... 24

Other Authorities

DUCivR 7-1(a)(4) ............................................................................................................... 36

**MOTION**

Defendants State of Utah, Utah State Department of Health and Human Services, and the Utah State Developmental Center ("State Defendants"), through counsel, and under Federal Rule of Civil Procedure 12(b)(6), move to dismiss the Complaint (doc. 1) of Plaintiff Gabriella Collette (for herself and on behalf of Channin Collette).  The bases of the motion include:

- The Utah State Developmental Center is not an entity that can sue and be sued;

- The State Defendants are not "persons" subject to suit under 42 U.S.C. § 1983;

- The State Defendants retain sovereign immunity from Collette's Fair Housing claim;

- Collette's Title IX claim fails to state a claim because:

    o Collette has failed to show that the State Defendants provided an "educational program or activity" in which Channin was enrolled; and

    o Collette has failed to plead facts showing that the State Defendants were deliberately indifferent to a serious risk of sexual abuse or discrimination;

- Collette's ADA claim fails to state a claim because Collete has not stated the elements of discrimination based on disability or failure to accommodate; and

- Collette's state tort claims are barred by the Government Immunity Act of Utah because the acts arise out of an assault or battery

For these reasons, more fully discussed in the following Memorandum of Law, the State Defendants request that the Complaint be dismissed with prejudice.

## MEMORANDUM OF LAW

## INTRODUCTION

This case arises from the tragic sexual assault of Channin Collette, a nonverbal, severely disabled person who was residing at the Utah Developmental Center, a facility operated by the Utah Department of Health and Human Services. The sexual assault occurred at the hands of Jarod Squire, who was working at the Center at the time. Another worker at the Center found Squire naked with the victim and called law enforcement, and thereafter Squire admitted that he had sexually touched and engaged in forcible sexual abuse of Channin. Squire has pleaded guilty to three criminal counts, including the First Degree felony of

Attempted Forcible Sodomy,[1] and has been committed to custody to serve his sentence.

The facts of the case are undoubtedly awful, and the State Defendants understand Ms. Collette's desire for justice for the harm that befell Channin. However, a lawsuit for money damages against the State and its subsidiary for the federal and state causes of action asserted is not the right vehicle for that justice.

First, Collette cannot bring a claim against the Utah Developmental Center, which is a program of DHHS, and cannot be sued in its own name.

Collette has attempted to sue the State and its agencies for federal constitutional violations through 42 U.S.C. § 1983.  But § 1983 claims can only be brought against "persons," and the U.S. Supreme Court has held that states, and arms of the state, are not "persons" subject to suit under that statute.

Collette brings a claim under the Fair Housing Act.  But the State, and arms of the state, enjoy sovereign immunity from such claims.

Collette's claim under the right of action implied under Title IX of the Education Amendments of 1972 also fails because Collette has not, and cannot, plead and prove that the State Defendants operated an education program such

---

[1] *See* Docket, *State v. Squire*, Case No. 2411003319 (Utah 4th Dist. Ct filed March 11, 2024) attached hereto as Exhibit A.

that the protections of Title IX are triggered. And even if Collette could satisfy that requirement, she cannot show that DHHS was deliberately indifferent to any serious risk of harm, required for a Title IX claim.

Collette fails to allege facts that state either an ADA discrimination or failure-to-accommodate claim, and sexual assault at the hands of a government agent is insufficient.

Finally, Collette's state-law claims against the State Defendants are barred by the Governmental Immunity Act of Utah because Channin's injuries arise out of an assault or battery.

All claims should be dismissed with prejudice.

### FACTUAL BACKGROUND

The following facts, taken from Collette's Complaint, and facts that may be judicially noticed, form the basis of the State Defendants' Motion.

1. Channin Collette is a nonverbal individual with severe intellectual, emotional, and physical disabilities who requires around-the-clock care. Gabriella Collette is Channin's guardian and conservator.[2]

---

[2] Compl. (doc. 1) ¶¶ 1, 2, 15, 16, 17.

2.      At all relevant times, Channin lived at the Utah State Development Center, a facility overseen and managed by the Utah Department of Health and Human Services.[3]

3.      DHHS is a department "within state government."[4] It serves "as the health, health planning, medical assistance, and social services authority of the state."[5] It must take actions consistent with legislative appropriations.[6]  Its CEO is the Executive Director of DHHS, who is appointed by the Governor with the advice and consent of the Utah Senate.[7]  When DHHS imposes a fee, such fees are paid into the state treasury.[8]  Its budget is submitted by the Governor to the Legislature.[9]

4.      In all suits through any of DHHS's divisions or officers, DHHS "shall be considered the party in interest ...."[10]

---

[3] Compl. ¶¶ 3, 4, 15.  Plaintiff names the Department of Human Services, but that department merged with the Department of Health in 2022 to become the Department of Health and Human Services.  Utah Code § 26B-1-103 (noting the "consolidat[ion] into a single agency of state government all of the functions previously exercised by the Department of Health and the Department of Human Services).  The State Defendants will refer to the sued entity as DHHS.

[4] Utah Code § 26B-2-201(1).

[5] *Id.* § -201(2).

[6] *Id.* § -202(17), (21).

[7] *Id.* § -203(1).

[8] *Id.* § -209(3).

[9] *Id.* § 201(1).

[10] Utah Code § 26B-1-215(2).

5.      Defendant Jarod Squire (who is not represented by Undersigned Counsel and is not bringing this motion) was an employee of DHHS working at the Center.[11]

6.      Squire was found naked engaging in sexual activity with Channin on February 26, 2024.  When he was discovered, police were called, and Squire admitted to engaging in sexual assault of Channin three times.[12]

7.      Squire was arrested, charged with four felony counts, and pleaded guilty to three counts, including two counts of second-degree forcible sexual abuse and one count of first-degree attempted forcible sodomy. He has been sentenced and remanded to the custody of the Utah Department of Corrections.[13]

**LEGAL STANDARD**

The State Defendants bring motion under Federal Rule of Civil Procedure 12(b)(6).  In reviewing a 12(b)(6) motion, a court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff. *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).  But a claim survives only if "there is plausibility in the complaint." *Hall v.*

---

[11] Compl. ¶ 19.
[12] Compl. ¶¶ 22, 23.
[13] Compl. ¶ 25; Ex. A.; Sentence, Judgment, Commitment, *State v. Squire*, Case No. 2411003319 (Utah 4th Dist. Ct. entered March 4, 2025), attached hereto as Exhibit B.

*Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678; *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).

In reviewing a motion to dismiss, the Court may rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed. *See* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). That includes state-court docket sheets and judgments and orders from state and federal courts. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and

without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Stack v. McCotter,* No. 02-4157, 79 F. App'x 383, 391 (10th Cir. Oct. 24, 2003) (unpublished) (recognizing that the court can take judicial notice of a state district court docket sheet).

### LEGAL ARGUMENT

Collette fails to state a claim against the State Defendants for the violence Squire committed. As a threshold matter, Collette cannot bring a claim against the Utah Developmental Center, which is a program of DHHS, and cannot be sued in its own name. Next, § 1983 cannot be used to bring constitutional claims against states and arms of the state, which the State of Utah and DHHS both undoubtedly are. Similarly, Collette's Fair Housing Act claim is barred by sovereign immunity. Collette's Title IX claim fails because she cannot show that the State Defendants operated an education program triggering Title IX's protections and cannot show that the State Defendants were deliberately indifferent to a risk of sexual harassment. Collette's ADA claim fails to state either an ADA discrimination or failure-to-accommodate claim. Finally, Collette's state-law claims are barred by the Governmental Immunity Act of Utah because Channin's injuries arise out of an assault or battery. All claims should be dismissed.

### 1.  The Center is not an entity subject to suit.

As a threshold matter, Collette attempts to sue the Utah Developmental Center. Collette admits that DHHS "oversees and manages" the Center.[14]  Because it is a program of DHHS, and not an independent entity, claims against it should be dismissed because it is not subject to suit in its own name.

"Typically, governmental subdivisions do not qualify as separate entities amenable to suit." *Kojima v. Lehi City*, No. 2:13-CV-000755-EJF, 2015 WL 4276399, at *4 (D. Utah July 14, 2015) (unreported) (citing, among other cases, *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985)).  State law is used to determine whether a person can sue a governmental subdivision.  *Utah v. White*, 5 App'x 852, 853 (10th Cir. 2001) (unreported).

In this case, nothing in Utah state law would allow a suit against the Center.  In fact, state law specifically commands that DHHS "shall be the party in interest" in lawsuits appropriately brought by or against it. Utah Code § 26B-1-215(2).  And the Governmental Immunity Act of Utah specifies that state-law claims must "exclusive[ly] be brought against a "governmental entity," which includes the state and its subdivisions.  Utah Code §§ 63G-7-102(4)(a), (10), -202(3)(a).

---

[14] Compl. ¶ 4.

Just as plaintiffs cannot sue a prosecutor's office separate from the city, *Kojima,* 2015 WL 4276399, at \*4, or sue a sheriff's office separate from the county, *Crichlow v. Thompson,* No. 1:23-CV-00061, 2025 WL 392798, at \*4 (D. Utah Jan. 16, 2025), *report and recommendation adopted,* No. 1:23-CV-00061, 2025 WL 384614 (D. Utah Feb. 4, 2025), Collette cannot sue the Center separate from DHHS.  It should be dismissed as a defendant.

2. **Collette's First Cause of Action should be dismissed because the State Defendants are not "persons" subject to suit under § 1983.**

Plaintiffs' First Cause of Action, seeking damages for alleged violations of Channin's substantive due process rights protected by the Fourteenth Amendment to the U.S. Constitution and actionable under 42 U.S.C. § 1983, should be dismissed because the State Defendants are not "persons" subject to suit under that statute.

Section 1983 creates a cause of action against a "person" who under color of state law subjects another person to the "deprivation of any rights, privileges immunities secured by" federal constitutional or statutory law.  42 U.S.C. § 1983. Thus, to be liable under § 1983, a defendant must be a "person" as defined by the statute. Neither the State nor DHHS (and the Center, it subsidiary program) are.

16

### 2.1    The State is not a "person" subject to suit under § 1983.

The U.S. Supreme Court has held that states are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). In so holding, the Court concluded that the language of § 1983 does not "clearly indicate[]" that Congress intended to "alter the usual constitutional balance between the States and the Federal Government" by subjecting the state, as a sovereign, to suit. *Id.* at 64-65 (citations and quotations omitted). As a result, "the State of Utah is not a 'person' for purposes of § 1983 and no § 1983 claims can be brought against the State." *Bloomquist v. Utah*, No. 2:22-CV-00659, 2023 WL 2541987, at *2 (D. Utah Mar. 7, 2023), *report and recommendation adopted,* No. 2:22-CV-659-DAK-DBP, 2023 WL 2540605 (D. Utah Mar. 16, 2023) (unreported). The First Cause of Action must be dismissed against the State.

### 2.2    DHHS is not a "person" subject to suit under § 1983.

The First Cause of Action must be also dismissed against DHHS because, like the State, it is not a "person" subject to suit under § 1983. The Supreme Court has held that entities determined to be "arms of the state" for the purposes of the Eleventh Amendment are likewise not "persons" subject to suit. *Will,* 491 U.S. at 70; *accord Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Sutton v. Utah State Sch. for Deaf & Blind,* 173 F.3d 1226, 1233 (10th Cir. 1999) (determining that the Utah State School for the Deaf and Blind was an

17

"arm of the state" and not suable under § 1983); *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 575–76 (10th Cir. 1996) (determining that the University of Utah, and the University of Utah Medical Center, were both arms of the State).

The test for determining whether an entity is an arm of the state or some other local governmental entity or political subdivision requires an analysis of the character of the entity as defined in state law, the autonomy of the entity, the entity's finances, and whether the entity is primarily "concerned … with local or state affairs." *Steadfast Ins. Co. v. Ag. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007). While this multi-factor balancing test may require substantial analysis in close cases, *c.f.*, *Ute Indian Tribe of Uintah and Ouray Indian Reservation v. Ure,* 737 F. Supp. 3d 1183, 1204–09 (D. Utah 2024) (analyzing whether the Utah Trust Lands Administration is an arm of the state), that is unnecessary here because all the factors show that DHHS is clearly an arm of the state.

State law defines DHHS as a department "within state government." Utah Code § 26B-2-201(1). It serves "as the health, health planning, medical assistance, and social services authority of the state." *Id.* § -201(2). It is therefore defined in state law as a state agency.

18

It does not operate autonomously from the State, as its executives are appointed by the Governor with advice and consent from the Utah Senate. *Id.* § -203(1).

It does not have independent finances, as it must take actions consistent with legislative appropriations, *id.* § -202(17), (21), its budget is submitted by the governor to the Legislature, *id.* § -201(1), and when it imposes a fee, such fees are paid into the state treasury. *Id.* § -209(3).

It is much more under the control of, and beholden to the finances of, the State than the University of Utah or SITLA, entities which courts have considered arms of the state. *Cf. Watson,* 75 F.3d at 76; *Ute Tribe,* 737 F. Supp. 3d at 1209.

Accordingly, as other courts have held, *see Bradford v. Salt Lake City Police Dep't,* No. 2:09-cv-144-DAK, 2010 WL 681659 (D. Utah Fe. 23, 2020) (unreported) (concluding that DHHS's predecessor DHS was an arm of the state and protected by immunity), DHHS is an arm of the state and, like the State itself, not subject to suit under § 1983. *See Sutton,* 173 F.3d at 1233 (determining that the School for the Deaf and Blind was an "arm of the state" based on State control over its board and a comparison with the University of Utah).

The First Cause of Action should therefore be dismissed as to all State Defendants.

### 3. Collette's Second Cause of Action under the Fair Housing Act should be dismissed because State Defendants enjoy sovereign immunity from suit.

Collette's second cause of action arises out of the Fair Housing Act and the Fair Housing Amendment Act, 42 U.S.C. § 3601, et seq.  This cause of action should be dismissed against the State Defendants because they are entitled to sovereign immunity from suit on the claim.

A state's sovereign immunity is protected by the Eleventh Amendment, but extends beyond the Eleventh Amendment's plain terms.  *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54-55 (1996); *Alden v. Maine,* 527 U.S. 706, 715, 743, 754 (1999). That immunity also extends to state agencies that act as arms of the state.  *Mt. Healthy,* 429 U.S. at 280.

The State of Utah enjoys sovereign immunity from suit, unless the state has waived that immunity or Congress has expressly and validly abrogated the State's sovereign immunity under its proper exercise of its power permitted by Section 5 of the Fourteenth Amendment. *United States v. Georgia,* 546 U.S. 151, 159 (2006); *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 367 (2001).  Sovereign immunity applies "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).

20

The State has not waived its sovereign immunity from suit under the FHA. Utah law provides that unless expressly waived, all immunities—including sovereign immunity—are retained. Utah Code §§ 63G-7-101(3), -202(2).  Nothing in Utah law waives immunity for FHA claims. In fact, Utah specifically retains immunity for injuries that "arise out of" a "violation of civil rights".  Utah Code § 63G-7-102(4)(b).

Congress has not even attempted to abrogate states' sovereign immunity in the FHA, much less validly done so.  *See, e.g., McCardell v. U.S. Dep't of Housing & Urban Dev.*, 794 F. 3d 510, 522 (5th Cir. 2015) ("We hold that Congress did not make clear an intent to abrogate States' Eleventh Amendment sovereign immunity from suits brought under the Fair Housing Act …."); *accord Gregory v. S.C. Dep't of Trans.*, 289 F. Supp. 2d 721, 724–25 (D.S.C. 2003); *Melton v. Okla ex rel. Univ. of Okla.*, 523 F. Supp. 3d 1080, 1088–89 (W.D. Okla. 2021).  Therefore, the State Defendants retain their sovereign immunity on Collette's Fair Housing Act claim, and it should be dismissed.  *See id; see also Delkhah v. Moore*, 240 F. App'x 768, 771 (10th Cir. 2007) (unreported) (affirming district court's "well-reasoned" decision that the Kansas Division of Housing Development had Eleventh Amendment immunity from plaintiff's Fair Housing Act suit).

**4. Collette's Fourth Cause of Action under the implied right of action under Title IX should be dismissed because Collette has not pleaded that State Defendants operated an education program or activity, and because Collette has not pleaded deliberate indifference.**

Collette's Fourth Cause of Action, for damages under the right of action implied in Title IX of the Education Amendments of 1972, should be dismissed. Collette has not pleaded that the State Defendants operated an education program or activity such that Title IX applies.  And even if Collette had satisfied that element, she has not pleaded that the State Defendants were deliberately indifferent to any serious risk of sex discrimination or harassment.

The relevant portion of Title IX provides:

> *No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ….*

20 U.S.C. § 1681. The text of Title IX does not provide a remedy for private citizens to seek damages for its violation. Congress wrote the Act to be enforced via administrative action. *See* 20 U.S.C. § 1682 (providing that federal agencies charged with administering federal educational benefits are "authorized and directed to effectuate" § 1681); *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 638–39 (1999) (recognizing administrative enforcement as the primary Title IX remedy). Title IX operates according to a contract theory: in return for federal education funds, states agree not to

22

discriminate based upon sex in the administration of the benefitted programs. *E.g.*, *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 286 (1998).

Notwithstanding the lack of an explicit right of individuals to sue for a Title IX discrimination violation, the Supreme Court recognized an implied private right of action for damages under Title IX. *Franklin v. Gwinett Cnty. Pub. Sch.,* 503 U.S. 60, 78 (1992) (allowing a suit for damages based on sexual harassment by a district employee); *Gebster,* 524 U.S. at 284–92 (defining the limits of the damages right). "[S]exual harassment," including sexual assault undertaken by employees of an educational institution may constitute "discrimination in the school context under Title IX." *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 650 (1999); *Gebster,* 524 U.S. at 281.

However, the Court has been cognizant of the need to ensure that liability is imposed in fashion with the overall purpose and structure of the act. Accordingly, the implied private cause of action is limited in a number of respects. *Gebster,* 524 U.S. at 284–92; *Davis,* 526 U.S. at 642–45. These include the limitations that Title IX liability applies only to "education" programs and activities of entities receiving federal funds, and that a plaintiff must plead and prove deliberate indifference to the risk of sexual harassment by the entity.

Because Collette fails to plead facts satisfying both of those elements, the claim should be dismissed.

### 4.1    Collette fails to plead that DHHS operates an "education" program or activity.

Title IX applies only to "education program[s] or activit[ies] receiving Federal financial assistance …." 20 U.S.C. § 1681.  Congress has broadly defined "program or activity" to mean "all of the operations of" a State or local government entity.  20 U.S.C. § 1687.  However, Congress did *not* define what an "education" program is.  Courts have therefore used "ordinary rules of statutory construction to give content to the entire phrase …." *O'Connor v. Davis*, 126 F.3d 112, 117 (2d Cir. 1997).

Although an entity need not be an "educational institution" to be covered by Title IX, *see* 34 C.F.R. § 106.1, "in order to implicate Title IX in the first instance, an entity must have features such that one could reasonably consider its mission to be, at least in part, educational." *O'Connor*, 113 F.3d at 117–18.  The term "education" must have "*some* boundary," because otherwise "creative minds could conceivably read the word 'education' in Title IX to encompass every experience of life, transforming Title IX into a remedy for any dispute in which someone is potentially learning something." *Doe v. Mercy Catholic Med. Ctr.*, 805 F.3d 545, 555–56 (3d Cir. 2017) (citations and quotations omitted).  Therefore,

courts should examine whether the defendant's "program or activity has educational characteristics," such as whether it is "incrementally structured through a particular course of study or training," or if it "allows participants to earn a degree or diploma" or other formal certification "beyond mere on-the-job training," or if it "provides instructors, examinations, an evaluation process," or whether it offers accreditation or otherwise "hold[s] itself out as educational in nature." *Id.* If its "primary purpose" of the program is educational, then Title IX will apply, but if any learning opportunities are "incidental" to the program's goals, then Title IX will not apply. *Roubideaux v. N.D. Dep't of Corrs. & Rehab., 570 F.3d 966, 977–78 (8th Cir. 2009)* (differentiating a department of corrections prison industries program, not covered by Title IX, from vocational education offered in a prison setting, which would be covered).

This case is nearly identical to the facts and circumstances in *Colbert ex rel. Colbert v. District of Columbia*, 78 F. Supp. 3d 1 (D.D.C. 2015). In that case, a severely intellectually disabled person who needed 24/7 care and supervision resided in a group home. While there, she was raped (by another group home resident) and became pregnant, gave birth and lost her baby due to serious medical conditions existing at birth. *Id.* at 5–6. Her guardian brought claims against the facility and the District of Columbia, which had contracted with the

25

facility, including a Title IX claim. *Id.* at 7. In dismissing the Title IX claim, the court noted that the plaintiff had not alleged that the District received federal funds "to provide educational programs to" the plaintiff. As to the group home, the court held that the plaintiff's allegations it provided "unspecified vocational and educational services" through a plan of "habilitation" and "life skills" were insufficient. *Id.* at 15. It concluded that "life skills training that is part of habilitation is incidental" to the primary purpose of the group home, that any other reading of Title IX would be an overly broad interpretation that would "encompass every [education] experience in life," and that a "bald" allegation that the plaintiff was "subject to sexual harassment that interfered with her education" was insufficient to state a Title IX claim. *Id.* (citations and quotations omitted).

In this case, Collette has not made any non-conclusory allegations suggesting that the Center[15] was an education program or activity. Collette

---

[15] The fact that a government entity may offer some educational programs in a different context does not mean that the entity can be broadly sued for Title IX violations. "Title IX simply does not apply to claims that do not involve discrimination related to education or training." *Chapman v. Tenn. Dep't of Transp.*, No. 3:19-cv-00128 2021 WL 1110668, at * 3 (M.D. Tenn. March 23, 2021) (unreported) (concluding that claims of employment discrimination were not actionable under Title IX because the TnDOT employee, an operations manager, did not plausibly allege that her job had features that "one could reasonably consider its mission to be, at least in part, educational"); *accord Rossley v. Drake Univ.*, 336 F. Supp. 3d 959, 973 (S.D. Iowa 2018) (concluding that a university's Board of Trustees," which was a separate entity from the university did not "include any of the hallmarks of an education program or activity," and plaintiff's

merely alleges that the Center is an "educational institution."[16] That "bald" allegation is insufficient. *Colbert,* 78 F. Supp. 3d at 15; *Iqbal,* 556 U.S. at 681. Collette does not allege that the Center has instructors, examinations, or evaluations, a course of instruction, certifications, or advertised education programs. Rather, Collette describes Squire as a "caregiver" at the Center, and that Channin needed "24/7 care" as a "resident" of the Center.[17] If the Center provides any educational opportunities, Collette has not pleaded that they are anything but "incidental" to the primary purpose of the program—to provide housing and care to severely disabled individuals. *Roubideaux,* 570 F.3d 978 (8th Cir. 2009). Therefore, Title IX is inapplicable to Collette's claims and the cause of action should be dismissed.

### 4.2   Collette has not alleged deliberate indifference.

Second, the implied right of action under Title IX springs from its "contractual nature," the "express means of enforcement … operates on an assumption of actual notice to officials of the funding recipient." *Gebser,* 524 U.S. at 285. Therefore, a private plaintiff cannot recover damages from a school district "for a teacher's sexual harassment of a student based on principals of

---

retaliation claim based on his removal from the Board  was not actionable under Title IX).

[16] Compl. ¶ 64.

[17] Compl. ¶¶ 16, 20, 23.

respondeat superior or constructive notice, i.e., without actual notice to a school district official." *Id.* at 285, 287–88. The harasser's knowledge of his or her actions "is not pertinent to the analysis." *Id.* at 291. Rather, a cause of action exists only for the district's *deliberate indifference* to a *known risk of harm*; negligence is insufficient. *Id.*; *Franklin*, 503 U.S. at 75–76.

Furthermore, the private right of action exists only if an "appropriate person" has knowledge of the behavior and fails to remediate it. Therefore "even if every teacher at the school knew about the harassment," *Gebser*, 524 U.S. at 301 (Stevens, J., dissenting) an entity is not liable unless an official "with authority to take corrective action to end the discrimination" knows, and deliberately disregards, the discrimination. *Id.* at 290.

Though the Complaint alleges that multiple instances of sexual contact occurred between Squire and Channin, it makes no allegations that *anyone* at the Center had any knowledge that Squire was committing those acts, much less that anyone was deliberately indifferent to the known harassment. *Gebser,* 524 U.S. at 287–91; *see also e.g., Ross v. Univ. of Tulsa*, 859 F.3d 1280 (10th Cir. 2017); *Rost ex. Rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114 (10th Cir. 2008). As a result, even if the Center were an "education program or activity"

under Title IX, Collette's fourth cause of action fails to state a claim. It should be dismissed.

**5. Collette's Fifth Cause of Action under the ADA should be dismissed because Collette has failed to state a claim of discrimination.**

Next, Collette's Fifth Cause of Action, based on the Americans with Disabilities Act, fails to state a claim against the State Defendants.

Though it is somewhat difficult to parse, it appears that Collette attempts to state a claim for damages under Title II of the ADA. That portion of the ADA prohibits discrimination on the basis of disability in a public entity's programs or services. 42 U.S.C. § 12132.

To state a claim for Title II discrimination, a plaintiff must plead and prove that (1) the plaintiff is a "qualified individual with a disability," who (2) "was either excluded from participation in or denied the benefits of some public entitiy's services, programs, or activities, or what otherwise discriminated against by the public entity," and (3) the public entity took those actions "by reason of the plaintiff's disability." *Gohier v. Enright,* 186 F.3d 1216 (10th Cir. 1999). "Failure to satisfy any of these prongs defeats an ADA claim." *Crane v. Utah Dep't of Corrs.,* 15 F.4th 1296, 1312 (10th Cir. 2021).

Channin is clearly a person with a disability, and the State Defendants are public entities. However, Channin has failed to allege any facts on the other two

elements. Collette alleges that the Center "provides critical services" to persons with disabilities, and is the "only Utah facility" to do so,[18] but makes no allegations that Channin was actually excluded from participation in any program or otherwise discriminated against "by reason of" his disability.  The complaint contains a conclusory allegation that the State Defendants "failed to accommodate" Channin's disability, but doesn't state which state programs required "an accommodation of some kind to participate in or receive the benefits of its services." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1299 (10th Cir. 2016).  And Collette has not pleaded a single fact—not even a conclusory one— alleging that any discrimination that was taken "by reason of" Channin's disability.  *See id.*

Collette may be attempting to imply that the sexual assault by Squire, or the State Defendants' failure to prevent it constitutes disability discrimination. But courts have rejected such theories, reasoning that extending "discrimination" under the ADA to claims of physical or sexual abuse is "an attempt at unduly broadening the scope of the ADA [such that it would] turn 'subject to discrimination' into a catch-all phrase that includes any and all objectionable

---

[18] Compl. ¶¶ 71–72.

conduct." *Woods v. G.B. Cooley Hosp. Serv. Dist.*, 2007 WL 4812054, at * 2 (W.D. La. Dec. 10, 2017). Accordingly, courts have held that:

- A disabled child who was admitted to mental health hospitals could not bring ADA claims based on sexual abuse that occurred in the hospital, *id.* at *2;

- A disabled child who was sexually assaulted by another disabled child on a school bus could not bring an ADA claim, *Hernandez v. Ft. Bend Indep. Sch. Dist.*, No. H-19-915, 2019 WL 1934674 (S.D. Tex. May 1, 2019) (unreported);

- Disabled children who were physically sexually assaulted and had sexually explicit pictures taken of them by a school employee could not bring a claim under Section 504 of the Rehabilitation act because the District "did not exclude or deny benefits to" the children; rather, they put them in a special program for disabled students, *Strange v. Mansfield Indep. Sch. Dist.*, No. 4:18-CV-00101-O, 2018 WL 3950219, at *3 (N.D. Tex. Aug. 17, 2018) (unreported); and

- A disabled person who was sexually assaulted by a driver on a paratransit bus could not bring an ADA claim, *Woodberry v. Dallas Area*

31

*Rapid Transit,* No. 3:14-CV-03980-L, 2017 WL 840976, at *7 (N.D. Tex.

Mar. 3, 2017) (unreported).

Just as in those cases, in this case it appears that Collette argues that the

assault itself is "discrimination" under the ADA.  And just as in those cases, the

Court should reject that argument and prohibit the ADA from being used to create

"catch-all" liability for "any and all objectionable conduct." *Woodbury,* 2017 WL

840976, at * 7.  The claim should be dismissed.[19]

### 6. Collette's state-tort claims should be dismissed as barred by the Governmental Immunity Act of Utah.

The final claim asserted by Collette against the State Defendants[20] is

"Premise Liability" under Utah state law.  This claim should be dismissed because

it is barred by the Governmental Immunity Act of Utah.

---

[19] In addition, the State Defendants enjoy sovereign immunity from suit under the ADA. The U.S. Supreme Court has held that Congress can properly abrogate states' sovereign immunity under Title II in some circumstances. *See, e.g., United States v. Georgia,* 546 U.S. 151 (2006); *Tennessee v. Layne,* 541 U.S. 509 (2004).  However, the analysis to determine whether sovereign immunity is abrogated begins with an identification of "the state's conduct that allegedly violated Title II …." *Guttman v. Khalsa,* 669 F.3d 1101, 1113 (10th Cir. 2012).  Because Collette has not pleaded a violation of Title II, there can be no abrogation of immunity. *Id.*  However, if the Court determines that Collette has pleaded a Title II violation, the State Defendants reserve the right to assert sovereign immunity as a shield against liability in this case. *See id.*

[20] Collette's Sixth, Seventh, and Eighth (mistakenly labeled a second "third" cause of action) Causes of action for Negligence, Gross Negligence, and Sexual Battery appear to be asserted against Squire only.  See Compl. ¶¶ 75–96.  If Collette intended to name State Defendants in these causes of action, they would be barred under the Immunity Act for the same reasons that the Premise Liability claim is barred.

The Governmental Immunity Act of Utah "governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." Utah Code § 63G-7-101(2)(b). Under the Immunity Act, a "governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived." *Id.* § 63G-7-101(3); *see also Cunningham v. Weber Cnty.*, 2022 UT 8, ¶ 28; 506 P.3d 575 ("The GIA codifies the broad immunity that a sovereign traditionally enjoys from legal action . . . ."); *Asset Acceptance LLC v. Utah State Treasurer*, 2016 UT App 25, ¶ 6, 367 P.3d 1019 ("Utah case law has long recognized that sovereign immunity generally prohibits actions against the State unless it has expressly waived its immunity.").

The Act generally waives immunity "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." Utah Code § 63G-7-301(2)(i). Immunity is retained, however, in circumstances described in Utah Code § 63G-7-201(4), including when an injury "arises out of or in connection with, or results from . . . assault [and/or] battery." *Id.* § 63G-7-201(4)(b).

33

The Utah Supreme Court has consistently held that "immunity is retained under the [Immunity Act] if an assault or battery is involved, regardless of who the tortfeasor is, and even if the assault or battery occurs as the result of the negligence of the state or state agent." *Sanders v. Leavitt,* 2001 UT 78, ¶ 29, 37 P.3d 1052 (collecting cases). And that court has "rejected attempts to evade the statutory categories by recharacterizing the supposed cause of the injury. Rather, the focus is 'on the conduct or situation out of which the injury arose, not on the theory of liability crafted by the plaintiff or the type of negligence alleged.'" *Id.* (quoting *Ledfors v. Emery Cnty. Sch. Dist.,* 849 P.2d 1162, 1166 (Utah 1993)); *see also Petersen v. Bd. of Educ. of Davis Cnty. Sch. Dist.,* 855 P.2d 241, 243 (Utah 1993) (holding that a school district was immune from suit where the plaintiff was injured during an altercation involving a school official); *Tiede v. State,* 915 P.2d 500, 502 (Utah 1996) (collecting cases where the state is immune when the injury arises from an assault or battery).

Channin's injuries result from the assault and battery by Squire. Because the State Defendants have retained immunity when the injury is caused by an assault or battery, they are immune from Collette's state-law premise liability claim, and the court should dismiss that claim.

## CONCLUSION

For the reasons stated, the State Defendants request that the Court grant their motion and dismiss all claims against them, with prejudice.

RESPECTFULLY SUBMITTED THIS 2nd day of May, 2025.

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/*Kyle J. Kaiser*
KYLE J. KAISER
RANDALL S. KENT
Assistant Utah Attorneys General
*Attorneys for State Defendants*

35

## WORD COUNT CERTIFICATION

I, Kyle J. Kaiser, certify that this **MOTION TO DISMISS** contains 6258

words and complies with DUCivR 7-1(a)(4).

RESPECTFULLY SUBMITTED THIS 2nd day of May, 2025.

OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/ Kyle J. Kaiser*
KYLE J. KAISER
Assistant Utah Attorney General
*Attorney for Defendant*