Daniel S. Garner, UT Bar No. 14652
Geena Arata, UT Bar No.17512
THE GARNER LAW FIRM
406 West South Jordan Parkway, Suite 250
South Jordan, Utah 84095
Phone: (801) 849-9300
dan@garnerinjurylaw.com
geena.arata@garnerinjurylaw.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRIC COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GABRIELLA COLLETTE, for herself and on behalf of CHANNIN COLLETTE, an incapacitated person, | PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS |
| Plaintiff, | |
| vs. | Case No. 2:25-cv-00213 |
| UTAH STATE DEVELOPMENTAL CENTER; UTAH STATE DEPT. OF HUMAN SERVICES; STATE OF UTAH; JAROD SQUIRE; | Judge Ted Stewart |
| | Magistrate Judge Jared C. Bennett |
| Defendants. | |

TABLE OF CONTENTS

I.   Relief Sought and Grounds ..................................................................3

II.  Introduction & Factual Background ....................................................4

III. Legal Standard for Motion to Dismiss Per 12(b)(6) .........................5

IV.  The Court Should Deny Defendants' Motion as Plaintiff's Complaint States Constitutional Violations By State Actors. ..............................................7

   A.   Plaintiff Has A Constitutionally Established Right To Personal Security. ...........8

   B.   Defendants Were Constitutionally Obligated To Protect Plaintiff Based On The Special Relationship Doctrine. ....................................................9

   C.   The Danger Creation Theory Applies Because Defendants Created or Increased The Danger to Harm. ....................................................11

   D.   Defendants' Behavior Shocks The Conscience ...................................12

   E.   Defendants Misstate the Deliberate Indifference Standard. The Professional Judgment Standard Applies to the Due Process Claims................................13

   F.   Plaintiff's §1983 Claims Against All Defendants Survive Because there is a Nexus Between The Acts and Misuse of Employment Status. ......................15
      1.  Supervisor Liability Applies In This Case ...................................15
      2.  USDC Liability Based on The Monell Factors ...............................16

V.   Qualified Immunity Does Not Protect Defendants From Plaintiff's § 1983 Claim, Premise Liability, ADA Claim And FHA Claim. ..........................18

VI.  The Court Should Deny Defendants' Motion As Plaintiff Has Shown An Adequate Basis For The Fair Housing Act Claim.....................................22

VII. The Court should Deny Defendants' Motion as Plaintiff Adequately Pled Title IX Violations Against Defendants. ................................................25

VIII. Conclusion ....................................................................................25

## I.    RELIEF SOUGHT AND GROUNDS

Defendants' motion must be denied because Plaintiff Gabriella Collette, for herself and on behalf of Channin Collette, an incapacitated person, (collectively referred to as "Plaintiff" or "CC" herein) has put forth sufficient facts that, if assumed to be true, state a claim for relief that is plausible on its face. Plaintiff asserts eight causes of action against all Defendants including Defendants Utah State Developmental Center, State of Utah, and Utah State Department of Human Services (now known as Department of Health and Human Services), collectively referred herein as "State Defendants". State Defendants seek dismissal of Plaintiff's §1983 Substantive Due Process claim, Fair Housing Act claim based in discrimination, Premise Liability claim, Title IX claim, and claim based on the Violation of American with Disabilities Act.

Plaintiff has sought relief from State Defendants based in substantive due process. Plaintiff's §1983 substantive due process claim survives because CC had a clearly established right to personal security and State Defendants had a special relationship and duty to protect him while in Court mandated state custody. Additionally, State Defendants created the danger or increased the danger for CC's harm when USDC created policies allowed Defendant Squire to care for CC alone and outside of supervision on a repeated basis. Recurrent physical and sexual abuse by State Defendants and Defendant Squire shocks the conscience. Finally, there is

an adequate nexus between Defendants' policies and acts and misuse of state employment status.

Plaintiff's other claims—Fair Housing Act claim based in discrimination, Premise Liability claim, Title IX claim, and claim based on the Violation of American with Disabilities Act—also survive against State Defendants as qualified and sovereign immunity do not apply. Qualified immunity is a defense to claims against the government only when State Defendants show that their actions did not violate an established right and were objectively reasonable. Plaintiff's right to personal safety is an established right. Physical and sexual assault cannot be argued as objectively reasonable.

## II.    Introduction & Factual Background

Plaintiff brings a civil action against Defendants as a result of a pattern of abuse and violations to CC's personal autonomy and safety. CC is an adult living with developmental disabilities. He is non-verbal and requires significant care. CC resides at USDC because of his disabilities and care needs. USDC is the only state facility in Utah that can provide CC with the level of care he requires.

CC was sexually assaulted at USDC more than once by Defendant Squire. Defendant Squire was employed at the facility for approximately six months. In February 2024, Defendant Squire and CC were found naked in a bathroom on the

USDC premises. Defendant Squire disclosed at least three instances of sexual abuse to CC after Defendant Squire was arrested and questioned. Other reports of physical abuse are known by Plaintiff which also give rise to the claims stated in the Complaint and herein. There was and is a pattern of abuse to CC on behalf of all Defendants, including State Defendants.

Plaintiff objects to the Court's review and reliance on any facts that Defendants seek to be judicially noticed, and which are not included in Plaintiff's Complaint. The standard for a Rule 12(b)(6) Motion is that the Court must rely on the facts described within the Complaint and may not consider outside information. Defendants rely on several facts not stated within the complaint including the criminal case docket for Jarod Squire, background knowledge of the Department of Human Services and its business model, and internal policies. Plaintiff objects to Fact number 3, number 4 as they insert information that is not provided in the Complaint.

## III.  LEGAL STANDARD FOR MOTION TO DISMISS PER 12(B)(6)

Rule 8(a) provides that the pleading need only set out a generalized statement of facts from which the opposing party will be able to frame a responsive pleading. Fed.R.Civ.P. 8(a). Thus, in appraising the sufficiency of the allegations, "the [pleading] should not be dismissed for failure to state a claim unless it appears

beyond doubt that [plaintiff] can prove no set of facts in support of his claim that would entitle him to relief." *Id.*

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir.1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322.

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955; *Mink v. Knox,* 613 F.3d 995, 1000 (10th Cir.2010) "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678.

State Defendants violated CC's due process rights by failing to protect him from the risk of assault. In reviewing the Complaint, there are sufficient facts from which the opposing party will be able to frame a responsive pleading. The Complaint provides enough information for the Defendant and Court to conclude that Defendant's failures were a substantial departure from professional judgment – the proper standard here – as well as objectively reckless; Defendant had the authority and duty to protect CC, and qualified immunity does not shield them from liability.

## IV.  THE COURT SHOULD DENY DEFENDANTS' MOTION AS PLAINTIFF'S COMPLAINT STATES CONSTITUTIONAL VIOLATIONS BY STATE ACTORS.

The Due Process Clause provides that "no State shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. To survive a motion to dismiss under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). The Court only needs to find that the Complaint pleads a state actor engaged in conduct that "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible

actually did not base the decision on such a judgment." *Youngberg v. Romeo,* 457 U.S. 307, 323.

### A.    PLAINTIFF HAS A CONSTITUTIONALLY ESTABLISHED RIGHT TO PERSONAL SECURITY.

The "right to personal security constitutes a historic liberty interest protected substantively by the Due Process Clause." *Youngberg,* 457 U.S. at 315. Developmentally disabled individuals in state custody "have constitutionally protected rights to adequate food, shelter, clothing and medical care, to safe living conditions, and to freedom from undue bodily restraint." *P.C. v. McLaughlin*, 913 F.2d 1033, 1042 (2d Cir. 1990).

State officials are generally not required to provide care and protection to individuals. *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189, 201(1989). Relying on the premise that the purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protects them from each other," the Tenth Circuit has recognized two exceptions to the general *DeShaney* rule: (1) the special-relationship doctrine, and (2) the danger-creation theory. *Uhlrig v. Harder,* 64 F.3d 567, 572 (10th Cir. 1995). If either of the above exceptions apply, the conduct of the state actor must "shock the conscience", which is beyond the negligence standard. J*ohnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1142 (10th Cir.2006).

B.    DEFENDANTS WERE CONSTITUTIONALLY OBLIGATED TO PROTECT PLAINTIFF BASED ON THE SPECIAL RELATIONSHIP DOCTRINE.

Liability to State Defendants is triggered under the due-process clause when the special-relationship doctrine applies. A plaintiff must show that they were involuntarily committed to state custody to establish a duty to protect under the special-relationship doctrine. *Liebson v. N.M. Corr. Dep't,* 73 F.3d 274, 276 (10th Cir.1996). A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir.1995).

*Youngberg v. Romeo* clearly established that, when the state involuntarily commits a developmentally disabled individual to state custody, it makes a promise to that individual's family and friends that it will stand in their stead and take responsibility for his health and safety. *457 U.S. at 315–16.* Indeed, the promise of these protections is the primary justification for the significant infringement of fundamental liberty interests that the involuntary commitment of developmentally disabled individuals entails. *Id.* Accordingly, *Youngberg v. Romeo* put the state and its agents on notice that they had to provide substantive due-process protections to all developmentally disabled individuals involuntarily committed to state custody. *Id.* The Court stated that "if convicted criminals enjoyed a constitutional right to safe

and humane conditions, no thinking person could believe that innocent persons with developmental disabilities deserve anything less." *Id.*

*A.M. v. New Mexico Department of Health*, 65 F. Supp. 3d 1206, references *Youngberg v. Romeo* emphasizing the substantive due process protections that must be provided to developmentally disabled individuals. This case illustrates the application of the principles from *Youngberg* within the jurisdiction of the 10th Circuit, reinforcing the constitutional obligations of the state towards those who are involuntarily committed. *A.M. v. New Mex. Dep't of Health* 65 F. Supp. 3d 1206.

As applied here, CC's institutionalization creates the quintessential special relationship. CC was placed in state custody by Court Order, which created a special relationship that required State Defendants, to affirmatively protect CC from harm. Plaintiff has met both prongs of the special relationship exception. CC was and remains involuntarily committed to state custody. Defendant failed to provide for CC's individual basic need and failed to main his basic safety. Defendants cannot neglect these responsibilities by claiming a state employee has immunity or is outside the scope of the guaranteed protections.

C.    THE DANGER CREATION THEORY APPLIES BECAUSE DEFENDANTS CREATED OR INCREASED THE DANGER TO HARM.

State Defendants had a duty to protect CC under the due-process clause based on the danger creation theory. This exception provides that a state may be liable for an individual's safety "only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence. *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir.2001). The Due Process Clause protects against "deliberately wrongful government decisions rather than merely negligent government conduct." *Uhlrig v. Harder,* 64 F.3d at 573.

Plaintiff must show that his danger-creation claim for due-process violations meets a six-part test: 1) plaintiff was a member of a limited and specifically definable group; 2) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; 3) the risk was obvious or known; 4) defendant acted recklessly in conscious disregard of that risk; ... 5) such conduct when viewed in total, is conscience shocking; and 6) defendant ... created the danger or increased the plaintiff's vulnerability to the danger in some way. *Gray v. Univ. of Colo. Hosp. Auth.,* 672 F.3d 909, 920 (10th Cir.2012).

Here, the danger-creation exception applies. CC is a member of a limited and specifically definable group as a developmentally disabled individual involuntarily committed to state custody. State Defendants put CC at serious risk of immediate

and proximate harm by allowing employees to take CC off property, confine him into a bathroom, or otherwise be alone with a caretaker knowing CC could not care for himself. The risk of abuse is obvious when State Defendants allow vulnerable individuals to be alone with people in power. Additionally, Defendant Squire was a repeat offender, so the likelihood of repeat abuse was obvious and known.

State Defendants' policies were reckless because the policies allowed CC to be alone with Defendant Squire, even after prior instances and reported abuse. Sexual acts from a caretaker to a nonverbal developmentally disabled CC in state custody surely shocks the conscience. These facts establish Defendants created the danger—allowing caretakers to be alone with severely incapacitated individuals incapable of self-reporting—and inhibited further vulnerability. The danger was created by the Defendant as Defendant created the policies regarding caretaker privileges, responsibilities, and duties allowing Squire to be alone with CC. State Defendants hired and supervised Squire's actions and conduct.

D.    DEFENDANTS' BEHAVIOR SHOCKS THE CONSCIENCE

A government actor's official conduct intended to injure in a way that cannot reasonably be justified by any government interest most likely shocks the conscience. *See Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998) ("Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.")

Here, Plaintiff's substantive due process claims are based on sexual and physical abuse and assault allegations. Further, State Defendants were grossly negligent and recklessly indifferent in their failure to protect and care for CC. Plaintiff alleges that Defendants' failure to provide CC with the care and services they required as developmentally disabled individuals constituted an unjustified abdication of professional responsibility. The Court should find that these allegations, which the Court must accept as true, shock the conscience and are sufficient to state a claim against Defendants, pursuant to § 1983, for violation of CC's substantive due process rights.

E.    DEFENDANTS MISSTATE THE DELIBERATE INDIFFERENCE STANDARD. THE PROFESSIONAL JUDGMENT STANDARD APPLIES TO THE DUE PROCESS CLAIMS.

To show a substantive due process violation, a reasonable jury only needs to find that a state actor engaged in conduct that is "such a substantial departure from accepted professional judgment, practice, standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. *Youngberg,* 457 U.S. at 323. Failure to exercise professional judgment requires more than mere negligence; instead, it requires an abdication of professional responsibility. *Yvonne L. v. New Mexico Dept. of Human Services*, 959 F.2d 883, 894 (1992). Such an abdication of responsibility must be sufficient to "shock the conscience." *County of Sacramento,* 523 U.S. at 846.

The *Youngberg* court expressly rejected the deliberate indifference standard as too burdensome for claims brought by developmentally disabled individuals in state custody, recognizing that such persons are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 322. Youngberg sets forth essentially a gross negligence standard. Gross negligence is defined as a failure to observe even slight care, characterized by carelessness or recklessness to a degree that shows utter indifference to the consequences that may result. *Milne v. USA Cycling Inc.*, 489 F. Supp. 2d 1283.

In any event, all of the Defendants here received ample training on how to care for and protect individuals within their custody, including CC. *Youngberg's* more lenient professional judgment standard should therefore apply. Whether under a professional judgment test or a deliberate indifference test, Defendants' motion fails, particularly since, regardless of which test applies, this is a quintessential fact question for the jury. *See, e.g., MBIA Ins. Corp. v. Coop. Centrale Raiffeisen-Boerenleenbank B.A., No. 09 Civ. 10093, 2011 WL 1197634, at *15 (S.D.N.Y. Mar. 25, 2011); Charter Oak Fire Ins. Co. v. Trio Realty Co., No. 99 Civ. 10827, 2002 WL 123506, at *5 (S.D.N.Y. Jan. 31, 2002).*

F.    PLAINTIFF'S §1983 CLAIMS AGAINST ALL DEFENDANTS SURVIVE BECAUSE THERE IS A NEXUS BETWEEN THE ACTS AND MISUSE OF EMPLOYMENT STATUS.

The Tenth Circuit has directed that, while state employment is generally sufficient to render the defendant a state actor, conduct may only be fairly attributed to the state if there is a real nexus between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant. *Jojola v. Chavez,* 55 F.3d 488, 493 (10th Cir. 1995). The under color of law determination rarely depends on an easily identifiable fact, such as attire, the location, or acts in accordance with his or her duty. Instead, the Court must examine "the nature and circumstances of the conduct and the relationship of that conduct to the performance of his official duties." *David v. City & Cnty. of Denver,* 101 F.3d 1344, 1353 (10th Cir.1996).

*1.    SUPERVISOR LIABILITY APPLIES IN THIS CASE*

Government actors may be liable for the constitutional violations that another committed, if the actors "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights," thus establishing the "requisite causal connection" between the government actor's conduct and a plaintiff's constitutional deprivations. *Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir.2006). Thus, the Tenth Circuit reduced the test to what can be seen as a two-part test for supervisor liability, requiring the

plaintiff to prove "an affirmative link ... between the unconstitutional acts by their subordinates and their adoption of any plan or policy—express or otherwise—showing their authorization or approval of such misconduct." *Dodds v. Richardson,* 614 F.3d at 1200–01.

Here, Plaintiff affirmatively links the acts of Defendant Squire to the policies of USDC that allowed the abuse to occur. USDC allowed caretakers, supervisors, and other employees to be alone with CC and other individuals. The policy allowing incapacitated non-verbal individuals to be alone with one staff member authorized and gave USDC employees the opportunity to abuse USDC residents.

Defendant Squire was acting under color of state law when he violated CC's rights. He was at USDC, on the job, and actively caring for CC directly before and after the sexual or physical abuse occurred. He used his power as a state employee to access vulnerable individuals and abuse them. The Defendants' acts in facilitating Defendant Squire's abuse and neglect of CC should remain and State Defendants' Motion should be denied.

2.    *USDC LIABILITY BASED ON THE MONELL FACTORS*

Plaintiff finds that the special-relationship doctrine and danger-creation theory demonstrate the validity of Plaintiff's claims under a 12(b)(6) analysis. In addition, *Monell v. Department of Social Services,* 436 U.S. 658, established significant standards regarding the liability of local governments under 42 U.S.C. §

1983. The Supreme Court held that local governments could be considered "persons" under § 1983 and thus could be sued for monetary, declaratory, or injunctive relief when the alleged unconstitutional action implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officer.

Using the *Monell* factors, *Graves* establishes municipal liability under § 1983, if plaintiff demonstrates: (i) that a state actor committed an underlying constitutional violation; (ii) that a policy or custom exists; and (iii) that there is a direct causal link between the policy or custom, and the injury alleged. *See Graves v. Thomas,* 450 F.3d at 1218. When a claim is brought against a municipality for failing to train its officers adequately, the plaintiff must show that the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants. *See Graves v. Thomas,* 450 F.3d at 1218.

Similarly, State Defendants should be analyzed under *Graves.* CC's sexual and physical abuse is a violation of his constitutional rights to security. As discussed above in the supervisor liability section, USDC implemented policies or customs that left residents of USDC alone with a single staff member. USDC's custom allowing a single staff member to confine a resident in private, remote, and discreet areas has a causal link to CC's abuse by Defendant Squire.

Defendants' attempt to characterize a state actor's liability solely as an exception to the general rule that state actors are only liable for their own acts misconstrues the entire history of civil rights in this country. Defendants' acts are "paradigmatic" of what Congress clearly intended to prohibit through the passage of the Fourteenth Amendment and 42 U.S.C. § 1983. *Owens v. Okure*, 488 U.S. 235, 241.

## V.    QUALIFIED IMMUNITY DOES NOT PROTECT DEFENDANTS FROM PLAINTIFF'S § 1983 CLAIM, PREMISE LIABILITY, ADA CLAIM AND FHA CLAIM.

Qualified Immunity does not protect Defendants. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan,* 555 U.S. 223, 231. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* at 231. When qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify. *Id.* at 239.

The Supreme Court has long held that the right to personal security constitutes a liberty interest protected substantively by the Due Process Clause. *Youngberg v.*

*Romero* 457 US 307, 315 (1982). The Court has clearly established that developmentally disabled individual in the custody of state officials likewise have constitutionally protected rights to adequate food, shelter, clothing and medical car, to safe living conditions and to freedom from undue body restraint. *Id.* The deliberate failure by state actors to protect CC or any developmentally disabled individual from harm would violate clearly established law.

The second inquiry is if the conduct of the state actor was objectively reasonable for Defendants to believe their acts did not violate CC's right to safety and safe living conditions. *Pearson v. Callahan,* 555 U.S. 223, 231. Defendants cannot meet this burden as a matter of law. Since qualified immunity is an affirmative defense, Defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time. *Smith v. Kenny* 2009, D.N.M., 678 F. Supp. 2d 1124.

Defendants cannot claim immunity as to Plaintiff's Premise Liability, ADA, FHA, or § 1983 claims as Defendants and staff miserably failed to protect CC from any sort of abuse or neglect. Prior to CC's third sexual assault at USDC, there were several reported instances of abuse, both physical and sexual. Defendants were responsible for ensuring the appropriate measures were taken to provide for CC's health, safety, and well-being including supervising and monitoring CC's wellbeing. Defendants were well aware of the dangers residents faced due to the way CC was

being cared for, but they proceeded anyway. Defendants made decisions regarding the placement of Defendant Squire with CC, hiring and training practices for Defendant Squire, and oversight of Defendant Squire's care to residents.

Based on the Complaint, Defendant Squire's actions were not objectively reasonable for a state caregiver to violate CC's rights. Defendants were aware of prior instances of abuse to CC, and it can be concluded that the lack of reporting, lack of intervention, and lack of supervision was objectively unreasonable. Squire and other employees not yet known are not immune and the motion to dismiss should be denied.

Understandably, at this stage, the precise factual basis for the plaintiff's claims may be hard to identify, especially against a governmental entity. USDC has not released CC's file to his mother or other documentation relating to the care of CC at USDC. Those documents have not been produced as no discovery has been conducted. Plaintiff intends to collect documentation from USDC reflecting the known danger CC was in during the fact discovery period.

Plaintiff was without subpoena power or the ability to send formal discovery requests until the Complaint was filed. Plaintiff does not know all the persons involved in CC's care as this point. Plaintiff needs the discovery process to learn more about the claims Plaintiff has brought.

CC is able to communicate in a unique way with his mother as he is a nonverbal incapacitated individual. CC and his claims should not suffer due to his incapacity. CC's advocates should be able to investigate the claims on his behalf. The only reason Plaintiff's mother was informed of the sexual abuse was due to a third-party report as CC was not able to disclose the abuse to his mother or caretakers.

CC has plausibly pled that Defendants abdicated professional responsibility when Defendant sexually assaulted CC multiple times on the premises. Defendants knew CC was incapable of consent. Defendants were aware CC could not make fully informed decisions for himself, nor could CC protect his own rights or interests. Indeed, the sole reason for CC's residence at USDC was due to his inability to care for himself.

The Court must find that the facts in the Complaint are true. Qualified Immunity does not bar CC's Premise Liability, ADA, FHA, or § 1983 claims, because CC's rights have been clearly established. State Defendants' conduct was a substantial departure from professional judgment and was objectively reckless. The facts alleged in the Complaint shock the conscience and are sufficient to override Defendants' qualified immunity defense at the preliminary stage of this case.

## VI.   THE COURT SHOULD DENY DEFENDANTS' MOTION AS PLAINTIFF HAS SHOWN AN ADEQUATE BASIS FOR THE FAIR HOUSING ACT CLAIM.

The FHA provides that "it shall be unlawful ... to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith." 42 U.S.C. § 3604(b). The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section ... 3604." 42 U.S.C. § 3617.

The FHA has been interpreted to prohibit "governmental agencies from implementing or enforcing housing policies in a discriminatory manner. *Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003).* Courts have construed § 3604(b) of the FHA to prohibit the creation of a hostile environment by individuals who have control or authority over the terms, conditions, or privileges of sale or rental of a dwelling, like the prohibition imposed by Title VII against the creation of a hostile work environment. *Cain v. Rambert,* 2014 WL 2440596, at *4 (E.D.N.Y. May 30, 2014); see also *Anonymous v. Goddard Riverside Cmty. Ctr., Inc.*, 1997 WL 475165, at *4 (S.D.N.Y. July 18, 1997).

The Second Circuit recently decided *Francis v. Kings Park Manor, Inc., 917 F.3d 109 (2d Cir. 2019),* which found that a plaintiff may establish a landlord's

22

liability "for third-party harassment" if (1) the third party created a hostile environment for the plaintiff; (2) the housing provider knew or should have known about the conduct creating the hostile environment; and (3) notwithstanding its obligation under the FHA to do so, "the housing provider failed to take prompt action to correct and end the harassment while having the power to do so. *Id.* The Court held that a plaintiff is not required to allege that the defendant landlord's conduct with regards to the third-party's actions was the result of direct, intentional discrimination on its own part, rather than that of the third party. *Id.*

In the Tenth Circuit, similar principles regarding discrimination under the FHA can be found in cases like *Smith v. Avanti*, where the court addressed discrimination based on sex stereotypes and familial status under the FHA. 249 F. Supp. 3d 1194. This jurisdiction has recognized claims based on failure to conform to stereotypical gender norms as potentially viable under the FHA, drawing parallels to Title VII discrimination cases. *Mountain Side Mobile Estates Partnership v. Secretary of Housing & Urban Development* discusses disparate impact claims under the FHA, emphasizing the need for a prima facie case of discrimination and the defendant's burden to justify the challenged practice.

*Keys Youth Services, Inc. v. City of Olathe,* involved a claim under the FHA against a city government for discrimination and for failing to provide reasonable accommodation for a group home for mentally disabled individuals. *Kan., 38 F.*

*Supp. 2d 914 (D. Kan. 1999).* The court noted that the plaintiff could establish a prima facie case of discrimination by showing intentional discrimination, discriminatory impact, or refusal to make reasonable accommodations. *Id.* The court found that the city was not entitled to summary judgment on Plaintiff's Section 1983 claims related to the FHA, as Keys had standing to raise these claims as independent claims.

Here, Plaintiff has standing to raise discrimination under FHA as an individual affected by the policies USDC implements as CC's landlord. USDC's policies and procedures are discriminatory because the policies created a hostile environment for CC. CC essentially was forced to live with his sexual abuser. USDC knew or should have known about the conduct creating the hostile environment. A state-run facility should have the resources and staffing to supervise caretakers and their actions. There were many reports of abuse. Finally, USDC failed to take prompt action to correct and end the harassment while having the power to do so. USDC did not promptly address CC's abuse. Only after the third sexual assault did USDC terminate Defendant Squire and seek out treatment for CC. Oversight was not present by USDC and it resulted in a discriminatory and hostile environment for CC, a violation of the FHA.

## VII.  THE COURT SHOULD DENY DEFENDANTS' MOTION AS PLAINTIFF ADEQUATELY PLED TITLE IX VIOLATIONS AGAINST DEFENDANTS.

As stated above in Section V, no discovery has been conducted. Plaintiff will need to inquire into the Title IX funding and educational programs provided by USDC. Plaintiff has alleged in the Complaint that Defendants do receive federal funding for educational purposes and that a private claim based in Title IX is proper. The Court must find that the facts in the Complaint are true and should deny Defendants' motion.

## VIII.  CONCLUSION

Defendants' motion must be denied because Plaintiff has put forth sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. Plaintiff's §1983 substantive due process claim survives because CC had a clearly established right to personal security as established in *Youngberg v. Romero*. State Defendants had a special relationship and duty to protect him while in Court mandated state custody. State Defendants created the danger or increased the danger for CC's harm when USDC implemented customs and policies that allowed Defendant Squire to care for CC alone and outside of supervision on a repeated basis. Repeated physical and sexual abuse shocks the conscience. Finally, there is an adequate nexus between Defendants' policies and acts and misuse of state employment status.

Plaintiff's other claims likewise prevail Defendants' Motion to Dismiss because qualified immunity does not apply because State Defendants have not shown that their actions did not violate an established right and were objectively reasonable. Plaintiff therefore requests Defendants' Motion to Dismiss be denied in its entirety.

Submitted and Dated this 6th day of June, 2025.

THE GARNER LAW FIRM

/s/ Geena Arata
Daniel S. Garner
Geena Arata
Attorneys for Plaintiffs